Filed:  June 20, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 99-1040
(CA-97-150-3-MU)

_____

EEOC,

Plaintiff - Appellant,

versus

Stowe-Pharr Mills, etc.,

Defenadnt - Appellee.

_____

O R D E R

_____

The court amends its opinion filed June 19, 2000, as follows:

On the cover sheet, section 4 -- the word "Argued:" is added before the February 28, 2000, date.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Plaintiff-Appellant,

v.                                                                      No. 99-1040

STOWE-PHARR MILLS, INCORPORATED,
d/b/a Pharr Yarns,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-97-150-3-MU)

Argued: February 28, 2000

Decided: June 19, 2000

Before WILKINS, MICHAEL, and KING, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Michael wrote
the opinion, in which Judge Wilkins and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Caren Ilene Friedman, EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.
Philip Marshall Van Hoy, VAN HOY, REUTLINGER & TAYLOR,
Charlotte, North Carolina, for Appellee. **ON BRIEF:** C. Gregory
Stewart, General Counsel, Philip B. Sklover, Associate General

Counsel, Lorraine C. Davis, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Stephen John Dunn, VAN HOY, REUTLINGER & TAYLOR, Charlotte, North Carolina, for Appellee.

_____

## OPINION

MICHAEL, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) sued Stowe-Pharr Mills, Inc. (Stowe-Pharr) under Title I of the Americans with Disabilities Act (ADA) and Title I of the Civil Rights Act of 1991, alleging that Stowe-Pharr had taken discriminatory employment action against its former employee, Catherine Treece. The district court granted summary judgment to Stowe-Pharr, concluding that Treece's statement ("I [am] unable to work") in her Social Security Disability Insurance (SSDI) application judicially estopped the EEOC from asserting that Treece was a "qualified individual with a disability" under the ADA. A new Supreme Court case, decided after the district court ruled, requires a different approach: under Cleveland v. Policy Management Systems Corporation, 526 U.S. 795 (1999), a plaintiff is permitted to explain an apparent conflict between her SSDI and ADA claims. After considering the parties' briefs and arguments, which take Cleveland into account, we conclude that the EEOC has made a sufficient explanation and proffer on Treece's behalf to avoid summary judgment on the "qualified individual" element of the ADA claim. Accordingly, we reverse the award of summary judgment to Stowe-Pharr and remand for further proceedings.

I.

We state the facts in the light most favorable to the EEOC, the non-movant in the summary judgment proceedings. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Stowe-Pharr is a textile manufacturer that operates several production facilities in Gaston County, North Carolina. Catherine Treece, who has osteoarthritis, worked in production jobs at Stowe-Pharr plants during four separate periods. Her first three turns of work were at the Crescent plant in

2

1989, the I-85 plant in 1989, and the I-85 plant again in 1990. Stowe-Pharr claims that Treece was discharged from each of these jobs because of absenteeism. Nevertheless, Stowe-Pharr was willing to hire Treece a fourth time, and she went back to work at the Crescent plant on April 8, 1991. Because of a workforce reduction at the Crescent plant, Stowe-Pharr transferred Treece to its United Spinners plant on August 3, 1992. About eighteen months later, on February 21, 1994, Treece was transferred at her request to the I-85 plant, where her husband worked. Unlike the Crescent and United Spinners plants which had wooden floors, the I-85 plant had concrete floors.

After Treece began working at the I-85 plant, the symptoms of her osteoarthritis, including pain, fevered inflammation, and extreme swelling, worsened. On March 26, 1994, Treece took a leave of absence for surgery (a hysterectomy) that was not related to her osteoarthritis. She returned to the plant for work on May 24, 1994. Three days later, her physician, Dr. Donna Vegeais, determined that working on concrete floors was exacerbating Treece's osteoarthritis. Dr. Vegeais instructed Treece to wear support shoes and avoid working on concrete surfaces. The doctor documented these instructions by filling out a Stowe-Pharr medical form, which Treece gave to Larry Gibson, the I-85 plant superintendent on May 27, 1994. When he read the doctor's orders, Gibson told Treece that Stowe-Pharr did not operate any plants without concrete floors. Treece knew, however, that the Crescent and United Spinners plants had wooden floors, and she requested a transfer to one of those plants. According to Treece, she could have performed any number of textile mill jobs at Stowe-Pharr, if she had been allowed to work on a wooden floor.

Instead of transferring Treece to a different plant, Stowe-Pharr placed her on involuntary leave in late May 1994. Thereafter, on a number of occasions, she contacted Gibson and the personnel manager, Dan Tallent, to ask about a transfer. Tallent's usual response was that he did not know of any openings, but he was still trying to place her. Treece persisted, telling Tallent and Gibson several times that she had heard of openings at the wooden-floored Crescent and United Spinners plants; Tallent promised to call and check on what was available. The company, however, never arranged to transfer Treece to a plant with wooden floors. She was kept on leave until she had used the maximum (six months) leave permissible in any given

3

year. Stowe-Pharr then terminated her employment on September 14, 1994.

Stowe-Pharr's official (litigation) position as to why it did not transfer Treece to a wooden-floored plant differs from explanations given by two plant managers. In its summary judgment papers, the company said it "does not contend that there were no open positions in plants with wooden floors to which Treece could have been reassigned. Lack of a vacancy is not asserted as a reason that Treece was not transferred." Edward Gates, the company's personnel director, confirmed in his deposition that the plants are constantly hiring because of large turnover. Stowe-Pharr claims that it attempted to transfer Treece to either the United Spinners or Crescent plant, but the plant managers would not agree to the transfer because of her past record of some absenteeism and a "mooning" incident at both plants. However, Raj Sawhney, manager of technical services at the Crescent plant, testified that the mooning incident would not have prevented Treece's return to that plant. (Treece had apparently bared her buttocks on the production floor to show off a tattoo.) Sawhney downplayed the incident, characterizing it as one of the "silly things" people do at work: "People have done worse things and they have been accommodated, excused for that." Sawhney said that Treece was not allowed to transfer to the Crescent plant because he did not need any help there. Rick Wright, plant manager at the I-85 plant, testified that he could not locate an opening for Treece at a facility with wooden floors.

In January 1995, approximately seven months after she had been placed on leave and four months after her termination, Treece applied for SSDI benefits. At that time, Treece told the Social Security Administration (SSA) intake officer that she could work with an accommodation. On the advice of the intake officer, however, Treece stated in her application that she had been disabled since the time she took leave in March 1994. Specifically, her application says, "I became unable to work because of my disabling condition on March 24, 1994." On April 23, 1995, the SSA determined that Treece became disabled on December 2, 1994, and was entitled to benefits beginning June 1995. Treece has been receiving SSDI benefits ever since. It appears that Treece's medical condition has deteriorated since her termination. By the time she was deposed in 1997, she had

4

"serious[ ] doubt[s] that [she] could work in textiles ever again." She emphasized, however, that she "felt like [she] could still work" at a wooden-floored plant when she applied for SSDI benefits.

On April 1, 1997, the EEOC sued Stowe-Pharr under the authority of § 107(a) of the ADA, alleging that the company failed to accommodate Treece, placed her on a leave of absence, and subsequently terminated her, all in violation of Title I of the ADA. The district court applied the doctrine of judicial estoppel to bar the EEOC from asserting that Treece was "a qualified person with a disability because [Treece had] previously taken the position[in her SSDI application] that she was not." The district court then granted summary judgment to Stowe-Pharr, holding that the EEOC could not establish that Treece was a "qualified individual," a necessary element for a case under the ADA. The EEOC appeals, and we review de novo the district court's grant of summary judgment. See Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995).

II.

The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To prove its case for Treece, the EEOC must show: (1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that Stowe-Pharr discharged her (or took other adverse employment action) because of her disability. Id.; see also Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997); Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995). Element two -- whether Treece is a "qualified individual" -- is at issue on this appeal from summary judgment for the company. A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). "The term `reasonable accommodation' may include . . . reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). To satisfy the "qualified individual" element, the EEOC attempted to show that when Treece was placed on involuntary leave, and later discharged, she still could have worked if she had been transferred to a vacant position in a plant with wooden floors. The district court held, however, that the EEOC was judicially estop-

5

ped from making this assertion because Treece had said in her SSDI application that she was unable to work because of her "disabling condition."

As we said in the beginning, when the district court made its decision, it did not have the benefit of the Supreme Court's recent decision in Cleveland v. Policy Management Systems Corporation, 526 U.S. 795, 797 (1999) (holding that a claimant's statement of total disability in an SSDI application "does not automatically estop" her from asserting in an ADA suit that she can perform her job with reasonable accommodation). The plaintiff in Cleveland, Carolyn Cleveland, applied for SSDI benefits and filed an ADA action, making a statement (much like Treece's here) in the SSDI proceeding that appeared to conflict with her ADA claim. Specifically, after she was fired from her job, Cleveland sought and received SSDI benefits based on her sworn statement to the SSA that she was unable to work due to her disability (a stroke condition). Cleveland also sued her former employer under the ADA, claiming that she could have continued to work if the employer had provided reasonable accommodation (training and more time to complete her work). This apparent contradiction in Cleveland's SSDI and ADA claims prompted the Supreme Court to consider whether the claims were mutually exclusive.

The Supreme Court prefaced its analysis by noting that "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely `I am disabled for purposes of the Social Security Act.'" Cleveland, 526 U.S. at 802. Likewise, the same claimant's allegation in her ADA case that she can perform the essential functions of her job with reasonable accommodation is a statement of one of the necessary elements of her ADA claim. Id. at 807. Such statements, made to support different claims, appear to be inconsistent. They do not, however, "involve directly conflicting statements about purely factual matters." Id. at 802. Thus, the Cleveland Court said it was not disturbing the law in the various circuits dealing with "purely factual contradictions" in summary judgment proceedings. Id. at 802, 807.

After recognizing that Carolyn Cleveland's seemingly conflicting statements were not purely factual, but involved legal conclusions, the Supreme Court proceeded to analyze whether her ADA and SSDI

6

claims could be compatible. The Court's review of relevant provisions of the ADA and the Social Security Act revealed that "both [acts] help individuals with disabilities, but in different ways." Id. at 801. The ADA prohibits a covered employer from discriminating against a "qualified individual with a disability," namely, a person who can "perform the essential functions" of her job "with or without reasonable accommodation." 42 U.S.C. §§ 12112(a), 12111(8). The Social Security Act's SSDI program provides benefits to a person with a disability so severe that she is "unable to do [her] previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Social Security Administration does not take the issue of reasonable accommodation into account when it decides that a person is disabled for SSDI purposes. For that reason, an SSDI applicant need not "refer to the possibility of reasonable accommodation when she applies" for those benefits. Cleveland, 526 U.S. at 803. The differences between the two acts led the Supreme Court to conclude that there are "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." Id. More specifically, "an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff" is unable to work. Id. (emphasis omitted).

This does not mean, however, that an ADA plaintiff automatically avoids summary judgment when the defendant asserts that the plaintiff's sworn statement of total disability in her SSDI application has negated the "qualified individual" element of her ADA case. Rather, she is required to proffer a sufficient explanation for any apparent contradiction between the two claims. In the end, to avoid summary judgment, she must "make a showing sufficient to establish" a genuine issue of material fact on the "element essential to [her] case, and on which [she] will bear the burden of proof at trial." Id. at 806 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). (Cleveland does not mandate an analysis under the doctrine of judicial estoppel. The standard summary judgment framework is used instead.) The sufficiency of the required explanation is to be measured as follows:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with

7

the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807. The Supreme Court remanded Carolyn Cleveland's case to give her the opportunity to explain, by sworn statement, the apparent discrepancy between her SSDI statement that she was unable to work because of disability and her ADA assertion that she could perform the essential functions of her job.

The record in this case already contains sworn statements by Treece that explain the apparent contradiction between her SSDI claim and the ADA claim brought on her behalf. In her deposition Treece testified that no doctor had told her to stop working in the textile industry. Dr. Vegeais had simply instructed her not to work on concrete floors. At the time of her termination Treece believed that if she had been transferred to a plant with wooden floors, she could have continued to work in a production job. Further, according to her affidavit, Treece told the SSA intake officer that she could work with reasonable accommodation. However, in applying for SSDI benefits, Treece was not required to "refer to the possibility of reasonable accommodation." Id. at 803. The intake officer thus advised her to state on her application that she was unable to work due to her disability. She followed the intake officer's advice. It follows, says the EEOC, that the routine language Treece used on her SSDI application in January 1995 -- "I [am] unable to work because of my disabling condition" -- did not take into account whether she could have worked with reasonable accommodation. This explanation is sufficient for a reasonable juror to conclude that Treece's SSDI statement does not contradict her assertion in this (the ADA) case that she could have worked if Stowe-Pharr had accommodated her with a transfer to a wooden-floored plant. Accordingly, Treece's statement in her SSDI application does not preclude the EEOC from establishing a triable question on the "qualified individual" element of the ADA claim it presses for Treece.

8

Stowe-Pharr argues that even if the EEOC has proffered an explanation sufficient to harmonize Treece's SSDI claim and the EEOC's ADA claim, it is still entitled to summary judgment. According to the company, the record as a whole does not present a genuine factual dispute as to whether Treece was a "qualified individual," that is, a person who "with . . . reasonable accommodation" could "perform the essential functions" of her job. After examining the evidence proffered by both sides, we must disagree with Stowe-Pharr.

Stowe-Pharr points to the following statements from Treece's affidavit to argue that she could not work, even with reasonable accommodation: she sometimes used a cane, she climbed stairs one step at a time, and when she walked for long periods of time, her kneecap "would slide out of joint." The EEOC responds that Treece did not use her cane at the plant, that climbing stairs did not appear to be an essential function of her job, and that her kneecap problem (which was only triggered by "long periods" of walking) did not prevent her from doing her job. Stowe-Pharr also refers to further statements by Treece to support its argument. At her deposition in November 1997 Treece testified, "I'm totally disabled <u>now</u>." She added that she "seriously doubt[ed]" whether she "could work in textiles ever again." In her affidavit Treece said that after late 1994 she had to sit while working in her kitchen. Treece's deposition testimony clearly referred to her condition in November 1997, not her condition when she was placed on involuntary leave in May 1994 or terminated in mid-September 1994. The statement in Treece's affidavit may be explained in the same way: it appears that Treece did not begin the practice of sitting down to do kitchen work until some time after the adverse employment actions by the company. Of course, the date of an adverse employment decision is the relevant date for determining whether a plaintiff is a "qualified individual with a disability." <u>See Griffith v. Wal-Mart Stores, Inc.</u>, 135 F.3d 376, 380 (6th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1144 (1999).

The EEOC proffered evidence of its own to show that Treece was able to work with reasonable accommodation, that is, in a wooden-floored plant, when she was placed on involuntary leave and later discharged. Her doctor said that Treece's "<u>only</u> restriction" was that she "wear support shoes" and "avoid walking on concrete constantly." The doctor added that Treece should "work on[a] soft surface (not

9

concrete)" and that she could do a job that even required "frequent walking on [a] softer surface." Treece explained in her deposition that she could have worked on a wooden floor when she was terminated. Indeed, from the time Treece was placed on leave in May 1994 until she was discharged in September 1994, she made repeated requests to Stowe-Pharr for a transfer to a plant with wooden floors. Moreover, when Treece's friends and neighbors, who were Stowe-Pharr employees, told her about openings at the company's wooden-floored plants, she passed the information on to management at her old plant. Thus, the EEOC has made a sufficient showing to defeat Stowe-Pharr's motion for summary judgment on the "qualified individual" element of the ADA claim.

We summarize our review of the summary judgment record with Cleveland's language in mind: a reasonable juror could conclude that (1) the EEOC has sufficiently explained why Treece's SSDI statement is consistent with what she is saying in the ADA claim and that (2) she could "perform the essential functions" of her job with "reasonable accommodation." See Cleveland, 526 U.S. at 807. The district court therefore erred in holding that the EEOC cannot establish that Treece was a "qualified individual." The award of summary judgment to Stowe-Pharr on this ground is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED

10