Teenette C. JONES, Plaintiff,

v.

Michael O. LEAVITT, Secretary Department of Health and Human Services, Defendant.

No. 1:04CV00631.

United States District Court, M.D. North Carolina.

Sept. 29, 2006.

Sandra Jyll Polin, Durham, NC, for Plaintiff.

Lynne P. Klauer, Office of U.S. Attorney, Greensboro, NC, for Defendant.

### JUDGMENT

TILLEY, District Judge.

On July 21, 2006 the Recommendation of the Magistrate Judge was filed. On August 7, 2006 the Plaintiff filed timely objections to the recommendation that summary judgment be granted to the Defendant and that Ms. Jones' claim be dismissed. Following a *de novo* review, the Recommendation is ACCEPTED on the basis that there is an insufficient showing of pretext to create an issue for a jury that Phillip Hanson was aware Ms. Jones had the requisite "professional experience" to qualify for the Contested Position. The claim is DISMISSED WITH PREJUDICE.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

#### Facts

Plaintiff filed this suit alleging that her employer, the Department of Health and Human Services, discriminated against her because she is disabled. Defendant now moves to have the case dismissed or, in the alternative, to have summary judgment granted in its favor.

Plaintiff is a longtime federal employee who currently works in the Laboratory of Experimental Pathology (LEP), Histology Laboratory in defendant's Durham, North Carolina facility. She has both hearing and speech impairments which have been accommodated in various ways during her employment. However, she alleges that she was denied a Biologist position based on her disabilities.

In November of 1999, plaintiff was working in the LEP as a Biological Science Technician. On November 4, 1999, a vacancy announcement open to all United States citizens, was posted for the position of Biologist, GS–0401–11 in the LEP (Contested Position). This person was to work as a supervisor of the Histology Laboratory and as a lab assistant in another lab. (Report of Investigation (ROI) Ex. 20) On November 8, 1999, another

vacancy announcement, open only to NIEHS employees, was posted for the position of Biologist, GS–0401–11 in the LEP (Non-contested Position). This person was to work in the Histology Laboratory as an assistant to senior investigators. (ROI Ex. 15) The pay for the positions was the same, with the main difference being the supervisory duties associated with the Contested Position. Plaintiff applied for both positions.

The requirements for applicants seeking the Contested Position were (1) a bachelor's degree in a field related to the work of the position or education and work experience that was the equivalent and (2) a year of "professional experience" in an appropriate field that compares in difficulty and responsibility to work at the GS–09 level in Federal Service or a masters or equivalent degree. (ROI Ex. 20) The requirements for the Non–Contested Position were substantially the same. (ROI Ex. 15)

The applications for both jobs were submitted to defendant's Human Resources Department and were assigned to a person or persons with a backlog of cases. (Admin. Hearing Tr. p. 155) An employee named Phillip Hanson was later assigned to the Contested Position to help clear the backlog. He acted as the examiner for the position. In doing so, he reviewed plaintiff's application and determined that the position she held at that time was classified as a "Biological Service Technician." He decided that, by definition, a "technician" could not perform "professional" duties. For this reason, he found that plaintiff did not have the year of "professional experience" required for the Contested Position. She also did not have a graduate degree. He rated her as being ineligible for the position. (Admin. Hearing Tr. pp. 150–152) He also submitted a ranked list of the four candidates that he did find to be eligible. Julie Foley, Leader

of the Special Techniques Group, was instructed in a letter from the Human Resources Department that she was to choose from among the top three candidates on the list. (ROI Ex. 23) One of those candidates was hired for the Contested Position by Foley with Drs. Ronald Herbert and Robert Maronpot concurring in the decision.

The examiner for the Non–Contested position was Carolyn London. She too took the assignment to help clear the backlog. As part of her examination, she performed a "desk audit" of plaintiff's position and determined that plaintiff was performing "professional" work despite being classified as a technician. She found that this met the "professional experience" requirement and qualified plaintiff for the Non–Contested Position. (Admin Hearing Tr. p. 155) Plaintiff was submitted in the pool of candidates eligible for the Non–Contested position and was later selected for it.

At the time he ruled plaintiff ineligible for the Contested Position, Hanson had been working for defendant for about a month, but had performed similar work for sixteen years. (Admin Hearing tr. pp. 147–148) He never spoke to anyone else in Human Resources about the Contested Position and was not aware of the desk audit at the time that he found plaintiff ineligible. He also did not speak with plaintiff's supervisors about her. In fact, he did not know that plaintiff was hearing or speech impaired at the time that he handled her application. (Admin Hearing Tr. pp. 152, 156–157, 169)

### Motion to Dismiss

■ While the distinction defendant hopes to make between its motion to dismiss and motion for summary judgment is not entirely clear, it appears that the primary thrust of the motion to dismiss is aimed at any claims plaintiff may be raising other than her contention that she was not selected for the Contested Position

because of her disabilities. Defendant correctly points out that plaintiff must exhaust all administrative remedies before bringing a claim in this Court. *Long v. Ringling Brothers–Barnum & Bailey Combined Shows, Inc.,* 9 F.3d 340, 343 (4th Cir.1993)(citing *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976)). Unexhausted claims are normally dismissed. *See, e.g., Zografov v. V.A. Medical Center,* 779 F.2d 967, 970 (4th Cir. 1985). Defendant admits that plaintiff exhausted her administrative remedies as to not being selected for the Contested Position, but argues that she did not exhaust her remedies as to any other claims.

 does not directly oppose defendant on this point, but instead agrees that "[t]he main issue presented is whether Plaintiff Teenette C. Jones was discriminated against because of her physical disabilities (hearing impairment and speech impediment) when she was not selected for the [Contested Position]." (Pl.Brf. p. 7.1) She then describes other points raised in her arguments as "sub-issues" which must be addressed in order to decide the main issue. (*Id.* p. 8) Some of these points fit plaintiff's "sub-issue" description better than others. However, for the purposes of deciding the case, it is enough to say that plaintiff has agreed there is a single issue and that it concerns whether her non-selection for the Contested Position constituted discrimination based on her disabilities. Any sub-issues which need to be decided will be decided, but irrelevant sub-issues will not. To the extent that plaintiff's complaint or pleadings could be construed to raise other claims, the claims should be dismissed for failure to exhaust administrative remedies.

### Motion for Summary Judgment

Turning now to the main issue in the case and defendant's motion for summary judgment on that issue, the motion will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990). Still, it is critically important to note that the non-moving party cannot merely rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* There must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.,* 871 F.2d 479 (4th Cir.1989).

██ Plaintiff's discrimination claim is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* The standards for evaluating a Rehabilitation Act claim are the same as the standards used for claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq. Myers v. Hose,* 50 F.3d 278 (4th Cir.1995). Those standards forbid "discrimination against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." *Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 302 (4th Cir.1998)(quoting 42 U.S.C. § 12112(a)).

██ Plaintiff can prove a violation of the law either by direct evidence or by the use of the burden-shifting proof scheme set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *Ennis v. National Ass'n of Business and Educational Radio, Inc.,* 53 F.3d 55 (4th Cir.1995). Here, plaintiff claims to be able to use both types

of proof to establish her case. If she can produce direct evidence of discrimination, then she can proceed beyond summary judgment. To use indirect evidence, she must first establish the elements of a prima facie case of discrimination. Defendant will then have to give a non-discriminatory reason for failing to promote her. If it does so, plaintiff has the burden of showing that the proffered explanation is actually a pretext for discrimination. *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir.2006), *petition for cert. filed*, 74 U.S.L.W. 3642 (May 8, 2006)(No. 05–1426).

Plaintiff first points to what she says is direct evidence supporting her claim. She cites to statements by Drs. Maronpot and Herbert where they said that plaintiff had problems understanding investigators who contacted the lab where she worked and that these problems caused the investigators to seek out lab personnel without hearing impairments in order to make sure their requests were understood. (ROI Exs. 10, 11) Plaintiff contends that these statements show that discriminatory intent was the reason that supervisory responsibilities were included in the Contested Position.

■■■■■■ are two problems with plaintiff's argument. First, statements that note problems with plaintiff's performance which were related to her disabilities are not actually direct evidence of discrimination. These statements about plaintiff's ability to communicate are simply statements of apparent fact. For example, merely because a person may lack an ability for whatever reason does not immediately transform the comment on the matter into a discriminatory remark. There is no clear animus associated with the statements. Nor do the statements say that

the speakers considered her incapable of performing the Contested Position. Although, if this were true, plaintiff would have to show she was capable of performing the job—but both sides merely speak in meaningless generalities as to this issue. In any event, the statements merely note a problem that had occurred in the past.

Second, plaintiff cannot demonstrate that the alleged discriminatory attitudes impacted on the selection of another person for the Contested Position. The evidence before the Court does not show that she was excluded from the position because it contained supervisory responsibilities. Rather, it shows that she was excluded because Hanson rated her as ineligible based on a lack of education or "professional" experience. As will be discussed in more detail below, her disabilities did not have play a part in that decision given the uncontested evidence before the Court. For these reasons, plaintiff does not have direct evidence of discrimination and must rely on indirect evidence and the *McDonnell Douglas* scheme.

■■■ In order to demonstrate a prima facie case based on a failure to promote, plaintiff must produce evidence that (1) she had a disability, (2) her employer had an open position that she applied for, (3) she was otherwise qualified for the position she sought, and (4) she was not given the position under circumstances giving rise to an inference that she was not promoted because of her disability. *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959–960 (4th Cir.1996). Defendant contests plaintiff's ability to establish the final two elements of her claim.[1]

■■■ Regarding the issue of plaintiff's qualifications for the Contested Position,

---

1. Defendant, citing to *Halperin v. Abacus Technology Corp.*, 128 F.3d 191 (4th Cir. 1997), formulates the last element as being

"suffered an adverse employment action solely because of her disability." (Def.Brf. p. 12)

she has produced evidence that defendant rated her as not qualified for the Contested Position, but qualified for the Non–Contested Position. The two positions had basic requirements that were identical in all material respects. Therefore, there could well be a question as to whether or not she was actually qualified for the Contested Position. The Court will assume that plaintiff can establish the second element of her prima facie case.

 ability to establish the final element of her prima facie case is a different matter. Defendant argues that she cannot succeed because, while she did not get the position she most wanted, she got a materially equivalent position. As defendant correctly notes, violations of the ADA involve "adverse employment actions." *Equal Employment Opportunity Commission v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir.2000). An action is adverse only if it negatively affects the terms, conditions, or benefits of a plaintiff's employment. The decision to assign an employee to a position is not adverse simply because it is not the position she desires. There must be some difference in salary, title, responsibility level, promotion opportunity, benefits, etc. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir.2004).

Here, defendant states, with some support, that the Contested and Non–Contested Positions had the same title, occupational series, compensation level, and promotional·potential. (ROI Exs. 15, 17, 20) Plaintiff does not argue these points. However, she does contend that the Contested Position had a higher level of responsibility because it involved some supervisory duties that are not a part of the Non–Contested Position. (Compare ROI Exs. 15 and 20) She does not explain why

these additional duties make the position more desirable, as opposed to merely different. Also, defendant points to evidence that the "supervisory" functions were really just "oversight" of the laboratory and that other normal supervisory duties, such as employee evaluations, were not included with the position. (Admin. Hearing Tr. pp. 83–84) For this reason, it appears that the Contested and Non–Contested Positions were not different to such a degree that being selected for one versus the other was an adverse employment action. This means that plaintiff cannot establish her prima facie case.

██ Even if plaintiff could establish her prima facie case, she still cannot move beyond summary judgment because defendant has given a legitimate and non-discriminatory reason for not promoting her to the Contested Position and she has not shown that it is a pretext for discrimination. The reason given by defendant is that Hanson determined that plaintiff was ineligible for the Contested Position and did not include her on a list of eligible candidates. Therefore, Foley did not even have the option of considering plaintiff for the Contested Position.

██ Defendant has produced evidence to support its proffered reason for not selecting plaintiff. Hanson's testimony on the matter is clear and unrebutted. He testified at the hearing in front of the Administrative Law Judge that he did not include plaintiff in the list of eligible candidates for the Contested Position and that his reason for doing so was that he determined that she did not have the necessary education or professional experience to meet one of the requirements for the job. According to his testimony, he did not, indeed could not, have discriminated against plaintiff on the basis of her disabilities because he was not aware of them.

As will be seen, this difference in formulation has no impact on the case.

Nor could any of plaintiff's coworkers or supervisors have influenced his decision because he made the decision entirely by himself without speaking to anyone outside or even inside the Human Resources Department. Once Hanson compiled the list, it was sent to Foley and she was instructed by Human Resources to pick from the top three candidates on that list. Plaintiff has produced no evidence suggesting that Foley could have ignored this directive or challenge the list.

Plaintiff's only direct argument challenging Hanson's testimony is that there is evidence that he was incorrect when he testified that the desk audit used by another person to rate plaintiff as eligible for the Non-Contested Position was not available to him at the time he rated her ineligible for the Contested Position. (Pl.Brf. p. 15) Even if true, it makes no difference in the case because his testimony is that he did not see the audit. Whether this was because it was not available or because he was not aware that it was available is irrelevant. His testimony is that, for whatever reason, he did not see it or know of it. Plaintiff points to no evidence to the contrary.

The remainder of the portion of plaintiff's brief dealing with the *McDonnell Douglas* analysis is somewhat unclear because it does not neatly delineate between arguments aimed at establishing a prima facie case, arguments aimed at showing that defendant's proffered reason is a pretext, and arguments aimed at showing that discrimination was the real motive for the decision not to give plaintiff the Contested Position. Still, most of the arguments in it either appear to apply to something other than establishing pretext or are irrelevant to the discussion. This is true for any arguments dealing with statements by Drs. Maronpot and Herbert, the tying of supervisory responsibilities to the Contested Position, whether defendant provided plaintiff with the same on-the-job training as other persons, and whether plaintiff has been given reasonable accommodations with respect to some other matters in the Histology Laboratory. None of these arguments affect the outcome of the case given that Hanson did not speak with Drs. Maronpot or Herbert, did not rule plaintiff ineligible because of the supervisory responsibilities[2] or her lack of on-the-job training, and did not even know of any disabilities that created a possible need for accommodations. At most, plaintiff may have some evidence that Hanson erred in ruling her ineligible for the Contested Position. However, the law forbids discrimination, not errors. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)(courts do not determine whether a decision is correct). Plaintiff has not successfully shown that defendant's reason for not promoting her to the Contested Position was a pretext for discrimination. This failure provides an additional reason to grant summary judgment to defendant.

**IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss or, in the alternative, for summary judgment (docket no. 19) be granted and that Judgment be entered dismissing this action.

---

**2.** Plaintiff states in her brief that she contacted the Human Resources Department and was told by an unidentified person (but not Hanson) that she was ruled ineligible because of a lack of immunohistochemistry experience. (Pl.Brf. p. 7) Plaintiff cites to no evidence supporting this claim. Moreover, she fails to cite to any evidence showing that the person she contacted ever spoke with Hanson about the reasons for his finding of ineligibility or had any basis for knowing his reasons.