<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1593**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant,

v.

GREATER BALTIMORE MEDICAL CENTER, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:09-cv-02418-RDB)

Argued: January 24, 2012          Decided: April 17, 2012

Before GREGORY and KEENAN, Circuit Judges, and Liam O'GRADY, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge O'Grady wrote the majority opinion, in which Judge Keenan joined. Judge Gregory wrote a dissenting opinion.

**ARGUED:** Anne Noel Occhialino, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Lawrence Joseph Quinn, TYDINGS & ROSENBERG, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** P. David Lopez, General Counsel, Lorraine C. Davis, Acting Associate General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Kristin P. Herber, TYDINGS & ROSENBERG, LLP, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

O'GRADY, District Judge:

The Equal Employment Opportunity Commission (EEOC) sued Greater Baltimore Medical Center, Inc. (GBMC) under the Americans with Disabilities Act (ADA), alleging that GBMC had discriminated against Michael Turner (Mr. Turner), a former GBMC employee. After discovery, the district court granted GBMC's motion for summary judgment, holding that under Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), EEOC had not offered a satisfactory explanation for the conflict between EEOC's claim that Mr. Turner could work "with or without reasonable accommodation" under the ADA and Mr. Turner's prior application for and receipt of Social Security Disability Insurance (SSDI) benefits. For the following reasons, we affirm the judgment of the district court.

I.

In reviewing a grant of summary judgment, we view the facts and draw all inferences in favor of the non-moving party, EEOC. See, e.g., Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011).

Mr. Turner began working for GBMC as a unit secretary in 1984. He worked part-time until 1990, when he became a full-time unit secretary. His responsibilities involved answering the phone, assisting with security badge access, answering

3

patient call lights, and using the fax machine. In 2005, Mr. Turner was working as a full-time unit secretary for GBMC's postpartum unit when he experienced multiple serious medical conditions.

In January 2005, Mr. Turner was hospitalized for necrotizing fasciitis, a life-threatening condition. He remained hospitalized for the next five months, underwent intensive treatment and rehabilitation, and was ultimately released from the hospital in July 2005. Mr. Turner's physician, Dr. Nathan Rosenblum, released him to work effective November 2005. That same month, Mr. Turner was hospitalized again, this time for a stroke. He left the hospital on December 27, 2005.

Two days later, on December 29, 2005, Mr. Turner applied for SSDI benefits with the help of his mother, Margaret Turner (Mrs. Turner). His application stated, in relevant part, "I became unable to work because of my disabling condition on January 15, 2005. I am still disabled." JA 32. The application indicated that Mr. Turner would notify the Social Security Administration (SSA) "if my medical condition improves so that I would be able to work, even though I have not yet returned to work." JA 33. A few days later, Mrs. Turner submitted a function and disability report to SSA stating that Mr. Turner's multiple conditions--necrotizing fasciitis, stroke,

4

and diabetes--rendered him unable to work. The SSA approved Mr. Turner's application on January 22, 2006 and awarded benefits retroactive to January 15, 2005, the date at which he was first hospitalized for necrotizing fasciitis. To date, Mr. Turner continues to receive monthly SSDI payments.

In January 2006, Mr. Turner notified GBMC that he intended to return to work. He submitted a form completed by Dr. Rosenblum indicating that he could return to work as a part-time unit secretary as early as March 6, 2006, subject to certain walking, bending, and lifting restrictions.[1] Mr. Turner also underwent a physical examination by Dr. Paul Valle, of GBMC's Employee Health Department. Dr. Valle reported that Mr. Turner could return to work on a limited part-time basis in a low-volume area that did not require multitasking, thus ruling out Mr. Turner's old unit secretary position. According to Dr. Valle, Mr. Turner could work safely as a file clerk.

In April 2006, GBMC told Mr. Turner that because he could not return to work with the same job classification and hours he had worked before, GBMC was not obligated to provide him with a position. GBMC leave policy does not guarantee that an employee on leave may return to his position, although an employee will

---

[1] It is unclear when Dr. Rosenblum's work releases were submitted to GBMC, but the parties do not dispute that they were submitted.

5

be considered for vacancies for which he is qualified. GBMC also told Mr. Turner that he would be terminated unless he found a suitable position before his leave expired on June 30, 2006.

Mr. Turner subsequently declined to apply for a file clerk position because it required mostly standing and walking and, in his view, was not challenging enough. JA 279-80, 384. He applied for a part-time unit secretary position, but on Dr. Valle's recommendation, was not considered. JA 389.

On May 15, Dr. Rosenblum again examined Mr. Turner and saw "no reason . . . that would prevent [Mr. Turner] from working a full 40 hour week (5-8 hour shifts per week), with no restrictions." JA 391. He also observed that Mr. Turner was "in much better physical condition than any time since 1992[.]" JA 391. On June 1, Dr. Valle cleared Mr. Turner to return to work full-time, though not to the unit secretary position. On June 9, Mr. Turner declined to apply for a float pool file clerk position because it was located far from his home and required too much driving.

As foretold, GBMC terminated Mr. Turner's employment on June 30, 2006. Since his termination, Mr. Turner has volunteered over 1,100 hours of his time to GBMC and has applied to approximately twenty-eight positions at GBMC, ten of which he was qualified for. GBMC has never rehired Mr. Turner. At no

6

time did Mr. Turner inform the SSA about his improved medical condition.

In January 2007, in an intake questionnaire submitted to EEOC, Mr. Turner indicated that his disability would not affect his ability to work as a unit secretary and that he never requested a reasonable accommodation from GBMC because he did not need one. He filed a charge against GBMC with EEOC in February 2007, and after some years of inactivity, EEOC found reasonable cause to believe that GBMC had violated the ADA. On September 14, 2009, EEOC filed this enforcement action.

## II.

### A.

The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Among other things, EEOC must show that Mr. Turner is a "qualified individual with a disability," that is, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." Boitnott v. Corning Inc., No. 10-1769, --- F.3d ---, 2012 WL 414662, at *2 (4th Cir. Feb. 10, 2012); 42 U.S.C. § 12111(8); see also Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997); Doe v. University of Md. Med.

7

Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995). "The term 'reasonable accommodation' may include . . . reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).

Many persons who experience disabling medical problems become eligible for programs like SSDI, at least temporarily, during medical leave. If such a person seeks SSDI benefits and attempts to bring a claim under the ADA, he may assert disability in an application for SSDI benefits while simultaneously asserting that he is a "qualified individual" under the ADA, that is, he is able to work with or without reasonable accommodation. A conflict of this sort may appear to bar the claimant from receiving both disability benefits and ADA coverage.

The Supreme Court addressed precisely this situation in Cleveland v. Policy Mgmt. Sys. Corp., in which the plaintiff, Ms. Cleveland, suffered a stroke affecting her concentration, memory, and language skills. Cleveland, 526 U.S. at 798. She improved quickly and returned to work two weeks later, but not before filing an application for SSDI benefits stating that she was "disabled" and "unable to work." Id. at 798-99. After the SSA denied her application for benefits, she was fired. Id. at 798. Ms. Cleveland then filed suit under the ADA. One week later, the SSA reversed course and awarded benefits. Id. at 799.

The district court granted summary judgment against Ms. Cleveland and the Fifth Circuit affirmed, holding that Ms. Cleveland's SSDI application had created "a <u>rebuttable</u> presumption that the claimant or recipient of such benefits is judicially estopped from asserting that he is a 'qualified individual with a disability.'" <u>Id.</u> at 799-800 (quoting <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 120 F.3d 513, 518 (5th Cir. 1997)) (emphasis in original).

The Supreme Court reversed, rejecting the proposition that a claimant who asserts disability in an application for SSDI benefits is presumptively ineligible for ADA relief:

> In our view, however, despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.

<u>Id.</u> at 802-03. To begin with, SSDI and the ADA have different statutory purposes. The SSDI program provides monetary benefits for individuals, whereas the ADA is intended to eliminate unwarranted discrimination and create equal opportunity. <u>Id.</u> at 801. Moreover, the legal standard used to determine SSDI eligibility is different from that used to determine status as a "qualified individual" under the ADA. SSA uses a five-step eligibility determination that sometimes grants benefits to

individuals who "not only can work, but are working." Id. at 804-05. The conflict between a claimant's ADA claim and his SSDI benefits application is therefore not a "purely factual matter," but rather a conflict between a legal position on the one hand, and on the other a "context-related legal conclusion" roughly equivalent to "I am disabled for the purposes of the Social Security Act." Id. at 802. In many cases, therefore, it is comparing apples and oranges to interpret a charging party's application for SSDI benefits as presumptive proof of total disability under the ADA.

Yet in other cases, a claimant's application for SSDI benefits may truly conflict with his claim under the ADA. Then, the Supreme Court said, a court must determine whether the ADA plaintiff has offered a "sufficient" explanation of the conflict between the claim of disability and the ADA claim. Id. at 805-06. The Court described its approach this way:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807. Although the Supreme Court determined that Ms. Cleveland had offered a sufficient explanation on the record

10

before it, the Supreme Court nevertheless remanded for further development of the factual record supporting Ms. Cleveland's explanation.  Id.

B.

This Circuit has applied Cleveland in two reported cases, both of which illustrate the fact-intensive nature of our task. In EEOC v. Stowe Pharr-Mills, Inc., 216 F.3d 373, 377, 379-80 (4th Cir. 2000), for example, summary judgment was inappropriate where the claimant, Ms. Treece, initiated an ADA charge that facially contradicted her SSDI application, which included the statement "I became unable to work because of my disabling condition on March 24, 1994."  Ms. Treece's continued receipt of SSDI benefits did not require summary judgment because an SSDI benefits intake officer had told her that she did not need to mention that she was limited only in her ability to work on wooden floors, and because her medical condition had degraded to total disability only after she was terminated.  Id. at 379-80.

Likewise, in Fox v. General Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001), summary judgment against the plaintiff was improper where his ADA hostile work environment claim did not overlap temporally with his separate claim for workers' compensation based on temporary total disability.  The plaintiff had applied for workers' compensation after leaving the plant

11

where he suffered mistreatment and had shown that his disability was caused by the hostile work environment. Id. at 178.

In both of these cases, the analysis under Cleveland involved careful examination of the factual record to determine whether the plaintiff had offered a satisfactory explanation for the apparent contradiction between the disability benefits application and the ADA claim.

III.

EEOC raises two issues on appeal. First, EEOC argues that the Supreme Court's decision in Cleveland does not and cannot apply to an enforcement action by EEOC. Second, if Cleveland applies here, EEOC argues that it has sufficiently explained the contradiction between Mr. Turner's eligibility for SSDI benefits and its claim that Mr. Turner can work with or without reasonable accommodation. We address each in turn.

A.

EEOC argues that Cleveland cannot apply to enforcement actions like this one. EEOC distinguishes this Court's decision in EEOC v. Stowe Pharr-Mills, Inc. because it had no occasion to determine whether Cleveland could ever permit summary judgment against EEOC in an enforcement action on behalf of an individual claimant.

12

As Stowe Pharr-Mills, Inc. demonstrates, however, the same analysis properly applies to ADA enforcement actions brought by EEOC. 216 F.3d at 377-79. It is true that EEOC has a governmental interest in an enforcement action that is not merely derivative of the individual claimant's interest. This does not mean, however, that a claimant's statements to other government agencies are somehow less relevant to an enforcement action on behalf of the claimant than they are for an action pursued by the claimant himself. After all, Cleveland did not consider the nature of the claimant's interest, but applied summary judgment principles. See Cleveland, 526 U.S. at 806 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The proper question is whether the conflict between the claimant's disability application and his claim to be a qualified individual under the ADA presents a genuine issue of material fact. Id. at 805-06; Stowe Pharr-Mills, Inc., 216 F.3d at 378; see also Giles v. General Elec. Co., 245 F.3d 474, 484 n.13 (5th Cir. 2001).

To avoid summary judgment in an enforcement action like this one, therefore, EEOC must make a showing sufficient to establish a genuine issue of material fact on the essential elements of its case, and on which it will bear the burden of proof at trial. Stowe Pharr-Mills, Inc., 216 F.3d at 378. This

13

merely means that EEOC has the same factual burden as would Mr. Turner pursuing his own ADA claim in federal court.

B.

When presented with an apparent conflict between the charging party's claim of disability and his status as a "qualified individual" under the ADA, the central question is whether the offered explanation for the conflict would warrant a reasonable juror's conclusion that, assuming the truth of, or the claimant's good faith belief in, the earlier statement, the claimant could nonetheless perform the essential functions of his job during the relevant time period. Cleveland, 526 U.S. at 807. Here, the relevant time period runs from the date of Dr. Rosenblum's first work release, dated January 23, 2006, to his termination on June 30, 2006.

EEOC can satisfy the Cleveland test by showing that an apparent or facial conflict is not a genuine conflict. See Cleveland, 526 U.S. at 807; Stowe Pharr-Mills, Inc., 216 F.3d at 378; Feldman v. Amer. Mem. Ins. Co., 196 F.3d 783, 790 (7th Cir. 1999) ("The ADA only protects the disabled who can work with or without reasonable accommodation while SSDI does not consider reasonable accommodation at all in defining disability."). If the conflict is real, EEOC can still avoid summary judgment by showing that returning to work during the relevant time period would not have constituted a material change in Mr. Turner's

14

condition that would trigger his obligation to notify the SSA. See Cleveland, 526 U.S. at 807; 20 C.F.R. §§ 404.316(b)(3), 404.1594(b)(1) (2012).

## C.

There can be little doubt that the conflict between Mr. Turner's SSDI application and his ability to work with or without reasonable accommodation is genuine. Mr. Turner's SSDI application, submitted on December 29, 2005, states, "I became unable to work because of my disabling condition on January 15, 2005," and, "I am still disabled." JA 32. Moreover, "I [Mr. Turner] agree to notify the Social Security Administration . . . [i]f my medical condition improves so that I would be able to work, even though I have not yet returned to work." JA 33. The record indicates without contradiction that Mr. Turner was unable to work after he left the hospital on December 27, 2005. Mrs. Turner later submitted a form called a "Function Report" (dated January 9, 2006) in which she described Mr. Turner's symptoms and impairment. JA 38-45. She noted severe disability in his left arm or hand, use of a bedside commode with hand rails, left-sided weakness requiring assistance, leg bracing, inability to drive, inability to lift more than 2-3 pounds, severely limited ability to stand, bend over and back, and walking. JA 39-43. Mr. Turner's reported disabilities included not only those caused by his stroke, but also by his medical

15

problems from early 2005.  Taken together, the SSDI application and documentation reasonably communicated that Mr. Turner was and would continue to be totally or almost-totally disabled.

Consistent with the application, the SSA awarded benefits to Mr. Turner on January 22, 2006.  JA 673, 677-79.  Mr. Turner continued to receive SSDI benefits at the time of the district court's decision.  JA 30.  Mr. Turner did not revise his statements to SSDI, and apparently never notified the SSA about a change in his condition.  JA 14, 66, 130.

These reported disabilities conflict with the multiple work releases provided by Dr. Rosenblum to GBMC on January 23, 2006, February 28, 2006, March 6, 2006, and May 15, 2006.  Except for the May 15 release, each imposed some work restrictions.  They all indicated that Mr. Turner could have returned to work, directly contradicting the assertion in his SSDI application that he was and continued to be unable to work.  There is no indication that the conflict could be resolved "with reference to variance between the definitions of 'disability' contemplated by the ADA and SSDI."  Feldman, 196 F.3d at 791.  At the time of his SSDI application, Mr. Turner represented that he was unable to work and would continue to be unable to work.  If Mr. Turner told GBMC in good faith that he could return to work, then he had no reason to believe that his earlier representations of disability were still accurate.  See Lee v. City of Salem, 259

16

F.3d 667, 676 (7th Cir. 2001) (assuming for the purposes of Cleveland analysis that claimant was not deliberately distorting the truth in SSDI application).

EEOC argues that Mr. Turner's eventual participation in the Ticket to Work program resolves any conflict with his prior statements about his disability. It does not. In any event, Mr. Turner began participating in the "Ticket to Work" program in 2009, almost two years after filing his ADA charge and well beyond the relevant time period. JA 530.

D.

We next turn to whether Mr. Turner's good-faith belief in the accuracy of his SSDI application is reconcilable with his ADA claim. Assuming that Mr. Turner believed in good faith that his SSDI application was accurate, this belief must be somehow have been consistent with his subsequent failure to notify SSA that he was no longer disabled. The central question is therefore whether Mr. Turner could have reasonably believed that his improved physical condition would not trigger his obligation to notify SSA about the change in his condition.[2]

---

[2] SSA regulations state, in relevant part: "If you are entitled to cash benefits or to a period of disability because you are disabled, you should promptly tell us if—
    (1) Your condition improves;
    (2) You return to work;
    (3) You increase the amount of your work; or
    (4) Your earnings increase."
(Continued)

17

The answer is clearly "no." Mr. Turner, with the assistance of his mother, submitted documentation showing without qualification that he was unable to work. JA 45. There is no evidence that Mr. Turner told the SSDI intake officer that he could have continued working with or without reasonable accommodation at that time. See Stowe Pharr-Mills, Inc., 216 F.3d at 379. The record supports the contrary conclusion: after Mr. Turner's significant medical problems in 2005, his unqualified representations of disability in his SSDI application were clearly intended to be taken at face value. SSA would have been justified in interpreting such stark assertions of disability - supported by later filings and never revised - as demonstrating Mr. Turner's inability to work. The mere possibility that Mr. Turner might have been able to work at the time of his benefits application cannot adequately explain the inconsistency; the record must contain evidence supporting the explanation. Measured from a baseline of total or near-total disability, any change in Mr. Turner's condition allowing him to work with or without reasonable accommodation would have been material. See Lee, 259 F.3d at 672; 20 C.F.R. § 404.1588(a) (2012). And the record shows that Dr. Rosenblum

20 C.F.R. § 404.1588(a) (2012). See also 20 C.F.R. pt. 404, subpts. D & P (2012).

18

reported consistent improvement in Mr. Turner's condition, starting in January 2006, less than a month after Mr. Turner left the hospital. It is implausible that Mr. Turner could have in good faith failed to notify SSA of such a change in his condition.

EEOC argues that because GBMC and other potential employers refused to hire Mr. Turner, he could have inferred in good faith that he was truly disabled and therefore was not obliged to tell SSA about his changed condition. This argument fails for three reasons. First, Mr. Turner asserted at deposition that he did not believe he needed reasonable accommodation to perform his job duties and that he never asked for one. JA 28-29. He could not have maintained a good faith belief in his ability to return to work without reasonable accommodation and simultaneously believed that he had no obligation to inform SSA of the change in his condition. Second, had Mr. Turner believed in good faith that he was completely disabled, as his SSDI application indicated, he would not have attempted to return to work, as the record shows that he did. Third, even if Mr. Turner had later concluded that he was not disabled, this course correction would have been irrelevant. As the Seventh Circuit has said, Cleveland "nowhere spoke of a change of heart . . . as an acceptable way to reconcile the potential inconsistency between SSDI and ADA claims." Lee, 259 F.3d at 677.

19

EEOC next argues that a reasonable juror could reconcile the inconsistency with reference to SSA's five-step process for determining SSDI eligibility, which involves a presumption that certain applicants are disabled.[3]  Although a presumption of disability and a claim of ability to work <u>may</u> turn out to be consistent, it does not follow that they <u>are</u> consistent. <u>Cleveland</u> did not say that the mere existence of a presumption, or even a showing that a particular claimant's eligibility was determined using a presumption, is a sufficient factual explanation.  Rather, the eligibility determination is merely one factor in a claimant's showing that his claim is consistent with status as a "qualified individual."  See <u>Cleveland</u>, 526 U.S. at 804.  EEOC points to no evidence in the record (and we have found none) that at the time of his SSDI application, Mr. Turner was able to work.

EEOC next argues that because Mr. Turner did not affirmatively misrepresent his improved condition to SSA, his mere "passive receipt" of disability benefits does not mandate this kind of scrutiny.  But <u>Cleveland</u> was not principally concerned with distinguishing between active and passive representations.  Rather, its focus was resolving factual

---

[3] EEOC indicates that Mr. Turner was considered eligible for SSDI benefits because he was presumed disabled under this test. Appellant's Br. at 51-54.

20

conflicts generated by contradictory representations. As already explained, the factual conflict here is unresolvable.

IV.

We emphasize that our holding is limited to the issues raised on appeal by EEOC. We in no way condone GBMC's refusal to reinstate Mr. Turner. Quite the contrary. We are deeply concerned about GBMC's attempts to prevent a partially disabled former employee from returning to work after he was cleared to return without restriction. Our result is nonetheless mandated by the plain language of the ADA and the relevant case law. The district court's judgment is therefore affirmed.

AFFIRMED

21

GREGORY, Circuit Judge, dissenting:

After combating illness and a stroke, Michael Turner attempted to return to work at GBMC, where he had been an outstanding and devoted employee for more than twenty years. Although his doctor cleared him to return to work, and although GBMC's doctor cleared him to work with some limitations, GBMC refused to give Turner his job back and repeatedly denied him a new one. Instead, it fired him. Since his termination, Turner has volunteered more than 1,100 hours at GBMC and sought dozens of paying jobs there. GBMC has steadfastly refused to rehire him. The EEOC alleged that GBMC's actions violated the ADA. The district court, however, granted summary judgment against the EEOC on the ground that Turner's application for and receipt of SSDI benefits precluded the EEOC from bringing its enforcement action under the ADA. Because I believe that ruling was erroneous and a jury should be able to weigh whether the EEOC proved the elements of its case, I respectfully dissent.

I.

The district court erred in holding that an EEOC enforcement action can be barred under Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), by a charging party's assertion that he is disabled for the purposes of the Social Security Act. As discussed at length in the majority opinion, Cleveland

22

addressed the apparent inconsistency between an individual's "context-related legal conclusion, namely, 'I am disabled for the purposes of the Social Security Act,'" and that same individual's ADA suit asserting an ability to work. 526 U.S. at 802. Recognizing that an "SSDI claim and an ADA claim can comfortably exist side by side," the Court rejected the adoption of a rebuttable presumption of estoppel in such cases. Id. at 802-03. Instead, the Court held that the individual "must proffer a sufficient explanation" for the inconsistency. Id. at 806. A central premise underlying the Court's decision is that it was the same party who took seemingly contrary legal positions in the SSDI application and the ADA lawsuit.

This case, in contrast, involves two different parties' context-related legal representations -- Turner's assertion in the proceedings before the SSA and the EEOC's assertion in this action. While it is true that the EEOC is seeking relief on Turner's behalf, it cannot be said that the EEOC made a prior inconsistent statement in Turner's SSDI application. Its action should not be barred through the happenstance of an unemployed victim having applied for and received SSDI benefits. Moreover, the Supreme Court has repeatedly recognized that "the EEOC is not merely a proxy" for the individuals for whom it seeks relief. Gen. Tel. of the NW v. EEOC, 446 U.S. 318, 326 (1970). Rather, the Court has observed, "[w]hen the EEOC acts, albeit at

23

the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." General Telephone, 446 U.S. at 326.

Barring EEOC enforcement actions based on a charging party's legal assertions of disability in SSA proceedings is not only contrary to a long line of Supreme Court cases refusing to apply estoppel against the government, it is also contrary to public policy. The EEOC's enforcement actions typically seek not only victim-specific relief but also injunctive relief such as training, posting of notices, and reporting requirements. As discussed above, these enforcement actions not only benefit the individuals on whose behalf the agency sues, but also benefit the public, which has an interest in the eradication of employment discrimination.

Finally, it cannot be said that allowing EEOC enforcement actions to proceed despite a charging party's representations of disability before the SSA confers an "unfair advantage" on the EEOC or an "unfair detriment" on employers such as GBMC who have not paid the disability benefits. New Hampshire v. Maine, 532 U.S. 742, 751 (2001) (stating that a consideration in whether to apply judicial estoppel is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party").

24

In sum, because <u>Cleveland</u> applied where the same party took potentially conflicting legal positions and because the EEOC is not a proxy for Turner but instead serves to benefit the public's interest in the eradication of employment discrimination, I would hold that an EEOC's lawsuit under the ADA cannot be barred by a charging party's representations of disability to the SSA.

II.

Even assuming arguendo that an EEOC action can be barred under <u>Cleveland</u> on the same terms as that of a private party, the court still erred in granting summary judgment. Contrary to the district court's conclusion, there are a number of ways a reasonable jury could reconcile Turner's SSDI statements and continued receipt of benefits with the EEOC's ADA claim, as required by <u>Cleveland</u>, to overcome summary judgment. For example, a jury could find that Turner had a good-faith belief in his SSDI assertion of disability because that is how GBMC treated him when it refused to give him his job back or to hire him for a new position despite his dozens of applications and superb work history. Turner's good-faith belief that he was still disabled for the SSA's purposes can be reconciled with the EEOC's lawsuit asserting that Turner was qualified under the

25

ADA.  Accordingly, the grant of summary judgment should be reversed, and the case should be remanded for trial.

## III.

For the reasons set forth above I respectfully dissent.